EDWIN LEONEL RODRIGUEZ AND EDWIN RICARDO RODRIGUEZ,

Petitioners,

VERSUS

THE PEOPLE OF THE STATE OF NEW YORK AND SUFFOLK COUNTY,

Respondents.
_____

**MEMORANDUM AND ORDER**
May 2, 2017
_____

JOSEPH F. BIANCO, District Judge:

On October 7, 2016, petitioners Edwin Leonel Rodriguez ("Edwin Rodriguez") and Edwin Ricardo Rodriguez ("Ricardo Rodriguez") (collectively, "petitioners) filed a petition for a writ of habeas corpus ("Pet."), challenging guilty pleas entered on May 9, 2012 in the County Court of Suffolk County. (*See* ECF No. 1 at 1–2, 5.) The County Court sentenced petitioners to a term of probation for six years (*id.* at 2, 6), but Ricardo Rodriguez has since been deported (*id.* at 11), and Edwin Rodriguez is presently in the custody of Immigration and Customs Enforcement ("ICE") with a deportation proceeding pending against him (*see* ECF No. 8). Petitioners contend that they received ineffective assistance of counsel because their attorney did not advise them that their guilty pleas were certain to result in deportation, thus entitling them to habeas relief under *Padilla v. Kentucky*, 559 U.S. 356 (2010).

As set forth below, the Court concludes that (1) the petition is untimely with respect to Ricardo Rodriguez and, in any event, he is not in respondent's custody; and (2) Edwin Rodriguez's ineffective assistance of counsel claim lacks merit. As such, the petition for a writ of habeas corpus is denied.

I. BACKGROUND

The Court has adduced the following facts from the petition and its supporting exhibits.

Edwin and Ricardo Rodriguez are twin brothers and natives of El Salvador who illegally entered the United State at age 9 with their parents. (Pet. at 15; *id.*, Ex. A ("Plea Hearing") at 2.) Prior to the underlying proceedings, both had received Temporary Protected Status from the United States. (Pet. at 15, 17; Plea Hearing at 18.) In November 2011, the People charged them each with one count of second-degree rape under New York

Penal Law ("NYPL") § 130.30, a Class C felony, and one count of sexual misconduct under NYPL § 130.20[1], a Class A misdemeanor. (Pet. at 2, 5.) Both petitioners plead guilty to the sexual misconduct count on May 9, 2012 in the County Court of Suffolk County and were sentenced to six-year terms of probation at a later proceeding held on July 10, 2012. (*Id.* at 2, 5–6; *see also id.*, Ex. B ("Sentencing Hearing").)

At the Plea Hearing, petitioners signed a waiver of the right to appeal, which contained the following acknowledgement:

> I have been advised that and understand that if, [sic] I am not a U.S. citizen, my plea of guilty may have an effect upon my immigration status including a likelihood or a certainty of deportation, which has been explained to me by my attorney . . .

(Pet. at 39; *see also* Plea Hearing at 8–10.) Also at that proceeding, petitioners confirmed that they were not U.S. citizens. (*See* Plea Hearing at 18.) The County Court then asked them, "Do you understand that no one can make any promises to you as to what effect these pleas of guilty will have on your status here?" (*Id.* at 18.) Each petitioner responded, "Yes." (*Id.*) The court also asked their attorneys if they had "explained these immigration issues to [their] respective clients?" (*Id.*) Both attorneys stated that they had. (*Id.*)

With the aid of new counsel, Edwin Rodriguez filed a motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on January 9, 2013 to vacate his judgment of conviction before the same County Court, arguing that he was denied effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), because his plea counsel failed to advise him that a guilty plea to sexual misconduct was certain to result in deportation. (Pet. at 3.) The County Court denied the motion on October 22, 2013. (*Id.*; *see also id.*, Ex. C ("October 22 Order").) The County Court reasoned that the only factual support for Edwin Rodriguez's claim was "his own self-serving affidavit in which he claims that counsel failed to inform him" of the consequences of his guilty plea. (October 22 Order at 2.) "Conspicuously absent from the moving papers," the County Court continued, "is an affirmation from plea counsel which would tend to corroborate the defendant's allegations." (*Id.*) Furthermore, the County Court noted that "the defendant's arguments are belied by the record made at the plea proceeding," highlighting the exchanges it had with both petitioners and their attorneys. (*Id.* at 3.) It therefore concluded that "[i]t was clear based upon an examination of the entire record before the Court that defendant was sufficiently advised of the possible immigration consequences of his guilty plea and that he was not afforded ineffective assistance of counsel." (*Id.*) Accordingly, it denied the motion. (*Id.*)

Ricardo Rodriguez filed his § 440.10 motion on February 6, 2014, raising the same arguments as his brother and arguing that he was denied due process based on the County Court's statements at the Plea Hearing. (Pet. at 6.) The County Court denied the motion on March 12, 2014. (*Id.*, Ex. D ("March 12 Order"), at 4.) It rejected his ineffective assistance of counsel argument for the same reasons it rejected Edwin Rodriguez's identical argument, citing the statements at the Plea Hearing and the written advisement in the waiver of the right to appeal. (*See id.* at 2–3.) The County Court also referenced CPL § 440.30(4)(d), which permits denial of motions to vacate where an allegation of fact is "made solely by the defendant and is unsupported by any other . . . evidence." (*Id.* at 3.)

2

As for the due process argument, the County Court held that it "sufficiently warned" Ricardo Rodriguez "that a guilty plea would have negative effects on his immigration status." (*Id.* at 4.) Moreover, even assuming this warning was deficient under *People v. Peque*, 22 N.Y.3d 168 (N.Y. 2013)—a case decided after petitioners plead guilty—the County Court concluded that *Peque* announced a new rule of constitutional criminal procedure, and, therefore, did not apply retroactively. (March 12 Order at 4.) For these reasons, it denied the motion to vacate. (*Id.*)

The Appellate Division granted Ricardo Rodriguez leave to appeal the March 12 Order on August 21, 2014. (Pet. at 6.) At that time, ICE had commenced removal proceedings against him. (*See id.* at 10.) An immigration judge entered a final order of removal against Ricardo Rodriguez on January 5, 2015. (*Id.*) The Board of Immigration Appeals subsequently denied his appeal and he was deported before the Appellate Division ruled on his appeal of the March 12 Order. (*Id.* at 11.)

On June 22, 2015, Edwin Rodriguez filed a direct appeal in the New York Supreme Court, Appellate Division. (Pet. at 4.) He also sought leave to appeal the October 22 Order, which the Appellate Division granted. (*Id.*) The Appellate Division then consolidated these two appeals. (*Id.* at 4.)

On February 24, 2016, the Appellate Division denied the appeals of both petitioners. *See People v. Edwin Rodriguez*, 25 N.Y.S.3d 614 (N.Y. App. Div. 2016) ("*Edwin Rodriguez*"); *People v. Ricardo Rodriguez*, 25 N.Y.S.3d 643, 644 (N.Y. App. Div. 2016) ("*Ricardo Rodriguez*"). With respect to Edwin Rodriguez, it held that he "was not deprived of the effective assistance of counsel, as it was plain that he was aware of the deportation consequences of his plea of guilty at the plea proceeding." *Edwin Rodriguez*, 25 N.Y.S.3d at 614. It dismissed Ricardo Rodriguez's appeal on the grounds that he had been deported, noting that, if it reversed the March 12 Order and vacated his conviction, Ricardo Rodriguez's "continued participation in the proceedings would be required." *Ricardo Rodriguez*, 25 N.Y.S.3d at 644 (citing CPL § 470.60(1)). The court further held, however, that the dismissal was "without prejudice to a motion to reinstate the appeal should the defendant return to this Court's jurisdiction." *Id.*

Edwin Rodriguez sought leave to appeal the Appellate Division's ruling to the New York Court of Appeals, but the court denied him leave on June 6, 2016. (Pet. at 5; *id.*, Ex. F.) He has not filed a petition for a writ of certiorari in the U.S. Supreme Court. (*Id.* at 5.)

Both petitioners filed the instant petition on October 7, 2016. (ECF No. 1.) Respondents filed their response on November 10, 2016. (ECF No. 5.) On March 10, 2017, Edwin Rodriguez requested expedited resolution based on the initiation of removal proceedings against him on March 7, 2017. (ECF No. 8.) This Court issued an order requesting supplemental briefing from Edwin Rodriguez concerning the timeliness of his petition on April 4, 2017 (ECF No. 9), and he submitted such a brief on April 18, 2017 (ECF No. 10). The Court has fully considered the parties' submissions.

II. DISCUSSION

Respondents argue that the Court should deny the petition on the merits because the record demonstrates that plea counsel, the County Court, and the prosecutors each advised petitioners of the immigration consequences of their plea to the extent required by *Padilla*, 559 U.S. 356. They further argue that the petition is procedurally barred with

3

respect to Ricardo Rodriguez because it is untimely and, in any event, Ricardo Rodriguez is not in their custody. As set forth below, the Court holds that the petition is untimely with respect to Ricardo Rodriguguez, and he does not meet the "in-custody" requirement for habeas relief. Furthermore, Edwin Rodriguez's ineffective assistance of counsel claim lacks merit because he failed to demonstrate prejudice from plea counsel's deficient performance.

### A. Ricardo Rodriguez

With respect to Ricardo Rodriguez, the Court concludes that the petition satisfies neither the timeliness nor the "in custody" requirement of 28 U.S.C. § 2244. Consequently, the petition is denied with respect to him.

#### 1. Timeliness

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No 104-132, 110 Stat. 1214, which, among other things, amended 28 U.S.C. § 2244(d)(1) to provide a one-year limitations period for filing a petition for a writ of habeas corpus by a person in state custody pursuant to a state court judgment. The general rule is that the limitations period will begin to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The statute also provides three exceptions under which the one-year limitations period will commence on a later date, specifically:

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.

§§ 2244(d)(1)(B)–(D). With respect to the final exception, the "burden of demonstrating due diligence rests with petitioner." *Shabazz v. Filion*, 402 F. App'x 629, 630 (2d Cir. 2010). Additionally, evidence is not newly discovered simply because petitioner did not possess it until recently. Rather, if the evidence could have been obtained earlier, "the date when the evidence was actually obtained has no effect on the AEDPA limitations period." *Duamutef v. Mazzuca*, No. 01CIV2553WHPGWG, 2002 WL 413812, at *9 (S.D.N.Y. Mar. 15, 2002).

Here, because he did not file a direct appeal, Ricardo Rodriguez's conviction became final on August 11, 2012, thirty days after he was sentenced. *See Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (conviction becomes final "when [a petitioner's] time for filing a notice of appeal from his judgment of conviction expire[s]"); N.Y. CPL § 460.10 ("A party seeking to appeal from a judgment or a sentence . . . must, within thirty days after imposition of the sentence . . . file with the clerk of the criminal court . . . a written notice

4

of appeal. . . .").[1] Accordingly, under § 2244(d)(1)(A) of the AEDPA, petitioners had one year to file their habeas petition beginning August 11, 2012, *i.e.*, until August 11, 2013.

Although the AEDPA also provides for tolling of the limitations period when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), Ricardo Rodriguez did not file his § 440.10 motion until February 6, 2014, almost six months *after* the deadline expired for him to file his habeas petition. Consequently, his petition is plainly untimely unless one of the exceptions enumerated in § 2244(d)(1) applies. An examination of Ricardo Rodriguez's claim, however, reveals that none of these exceptions applies. Ricardo Rodriguez does not argue (nor is there any basis in the record to support a finding) that there was any legal impediment barring him from filing his petition, that the factual predicate for his claims was not discoverable through the exercise of due diligence in the year prior to the filing of his habeas claim, or that there has been any intervening and applicable establishment of a constitutional right by the U.S. Supreme Court to which he would be retroactively entitled.

First, Ricardo Rodriguez does not identify any legal bar that prevented him from seeking habeas relief, and, thus, § 2241(d)(1)(B) does not apply. Second, Ricardo Rodriguez does not attempt to argue

---

[1] Ricardo Rodriguez points out that, under N.Y. CPL § 460.30, he had a right to request an extension of time to file an appeal, which expired one year after the initial thirty-day period for filing a notice of appeal expired. He argues from this that his conviction did not become "final" until August 9, 2013, and, therefore, the AEDPA one-year limitations period did not expire until August 9, 2014. (Pets.' Suppl. Br., ECF No. 10, at 4–5.)

This argument was squarely rejected in *Jarman v. N.Y.*, 234 F. Supp. 2d 213, 215 (E.D.N.Y. 2002). There, the court noted that the time to file an extension under § 460.30 is contingent on a showing that the defendant's failure to file the notice of appeal

> resulted from either: "(a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated, in person or by mail, concerning whether an appeal should be taken . . . due to defendant's incarceration in an institution and through no lack of due diligence or fault of the attorney or defendant."

*Id.* (quoting N.Y. CPL § 460.30(1)). In other words, this "extension period is available to a petitioner only in specific, exceptional circumstances." *Id.* "As the Supreme Court . . . noted in *Carey v. Saffold,* 536 U.S. 214 (2002)," the court continued, "the potential availability of additional state review under 'extraordinary circumstances' does not toll the one year AEDPA limitations period." *Id.* The court held, therefore, that "the mere possibility that an extension could have been granted . . . [was] insufficient to warrant an enlargement of a petitioner's final date of conviction." *Id.*; *see also McDermott v. Rock*, No. 907-CV-0932 GLS GJD, 2008 WL 346371, at *2 (N.D.N.Y. Feb. 6, 2008) (rejecting argument that § 460.30 delays the start of AEDPA's limitations period and concluding instead that it "merely tolls the running of an unexpired one-year time period" when a party actually seeks an extension).

The Court agrees with this analysis and, accordingly, holds that Ricardo Rodriguez's conviction became final when his initial thirty days to file a notice of appeal expired, *i.e.*, on August 9, 2013. In addition, it bears noting that Ricardo Rodriguez has not made any allegations that his failure to file a notice of appeal within the proscribed time limit resulted from either of the circumstances enumerated in § 460.30, and, thus, he may not have even been eligible for such an extension. He also does not allege that he actually sought an extension under this provision.

that the factual predicate of his claim was unknown to him when the limitations period expired. Failing to assert this argument can alone be grounds to find the exception inapplicable. *See, e.g.*, *Goodwin v. Pallito*, No. 2:14 CV 110 (WKS), 2015 WL 778613, at *4 (D. Vt. Feb. 24, 2015) (concluding that § 2244(d)(1)(D) would not apply where petitioner "d[id] not assert that he observed the alleged ineffective conduct only recently"). In any event, the factual predicate of his claim was obviously known to Ricardo Rodriguez within the limitations period because he was present when plea counsel advised him about the legal consequences of his plea and when the County Court informed him that "no one can make any promises to you as to what effect these pleas of guilty will have on your status here." (Plea Hearing at 18.) He was also present when his attorney confirmed that he, the attorney, had "explained these immigration issues to [Ricardo Rodriguez]." (*Id.*) Because the habeas claim is based on ineffective assistance of counsel and denial of due process stemming from the County Court's statements at the Plea Hearing, he plainly knew of the factual predicates for his claim within the limitations period.

The third and final possible justification for the belated filing is that "the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2244(d)(1)(C). This exception does not apply either. First, his ineffective assistance of counsel claim is based on *Padilla*, which was decided in 2010, two years before Ricardo Rodriguez's conviction. *See* 559 U.S. 356. Second, although his due process claim arguably invokes a new constitutional right—the right to receive notice from the sentencing court of the immigration consequences of a plea—initially recognized on November 19, 2012, that right was recognized by the New York Court of Appeals rather than the U.S. Supreme Court. *See Peque*, 22 N.Y.3d 168. In addition, the New York Court of Appeals has not held that this right applies retroactively to convictions that have become final. *See People v. Llibre*, 2 N.Y.S.3d 459, 460 (N.Y. App. Div. 2015) ("Although *Peque* is retroactive to cases pending on direct appeal, there is no basis . . . to extend retroactivity to convictions that have become final." (citations omitted)). Consequently, the third exception does not apply.

Accordingly, because Ricardo Rodriguez's claim was not filed within a year after his judgment of conviction became final and none of the grounds that could trigger the running of the limitations period at a later date applies, the petition with respect to Ricardo Rodriguez is untimely.[2]

---

[2] Although the instant petition is untimely, in "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must make two showings: (1) he must demonstrate that "extraordinary circumstances prevented him from filing his petition on time;" and (2) he must have "acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17 (citation omitted). The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Muller v. Greiner*, 139 F. App'x 344, 345 (2d Cir. 2005).

Ricardo Rodrigruez has made no showing that extraordinary circumstances prevented him from filing his petition on time. *Cf. Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (holding that petitioner did not state an "exceptional circumstance" warranting equitable tolling where he claimed ineffective assistance of counsel as the reason for the delay). Furthermore, given that he failed to file a direct appeal in the thirty days following his conviction or even seek an extension of time to file such an appeal, the Court concludes

## 2. Custody

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on "behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (emphasis added); *see also Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994) (denying a petition for writ of habeas corpus because the petitioner failed to satisfy "in custody" requirement). As the Third Circuit has noted, "custody is the passport to federal habeas corpus jurisdiction." *United States ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir. 1971). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack *at the time his petition is filed*." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (emphasis added). Specifically, the Court held that even a liberal construction of the "in custody" requirement for purposes of federal habeas relief does not extend to the situation where a "habeas petitioner suffers no present restraint from a conviction." *Id.* at 492. "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973). As a result, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Id.*

Physical confinement is not necessary to satisfy the "in custody" requirement, as, for example, a petitioner who is on parole or serving a term of supervised release is considered to be "in custody" for purposes of federal habeas corpus statutes. *See Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006).[3] In addition, "[t]he 'in custody' requirement is satisfied if the petitioner files the habeas petition *before* being deported." *So v. Reno*, 251 F. Supp. 2d 1112, 1120 (E.D.N.Y. 2003) (emphasis added). Where the petition is filed after deportation, however, the "in custody" requirement is not satisfied. *See Smith v. U.S. Customs & Border Prot.*, 741 F.3d 1016, 1019 (9th Cir. 2014) ("[A] non-citizen who has 'already been removed' prior to filing a habeas petition 'does not satisfy the "in custody" requirement of habeas corpus jurisdiction.'" (quoting *Miranda v. Reno*, 238 F.3d 1156, 1159 (9th Cir. 2001)) (brackets omitted)).

For this reason, Ricardo Rodriguez fails to satisfy the "in custody" requirement. Specifically, the immigration judge issued a final order of removal against him on January 5, 2015. (Pet. at 10.) By February 24, 2016, the day the Appellate Division decided his appeal from the March 12 Order, he had been deported. *See Ricardo Rodriguez*, 25 N.Y.S.3d at 644. ("At the end of September 2015, prior to oral argument, [Ricardo Rodriguez] was deported to his native country."). Given that the petition was filed after this date in October 2016, Ricardo Rodriguez does not satisfy the "in custody" requirement. Thus, this Court lacks jurisdiction over him. *See Ogunwomoju v. United States*, 512 F.3d

---

that he did not act "with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17 (citation omitted). Therefore, equitable tolling is not warranted.

[3] For this reason, Edwin Rodriguez plainly meets the "in custody" requirement because he is serving a term of probation. *See Earley*, 451 F.3d at 75 (2d Cir. 2006) ("[S]upervised release satisfies the 'in custody' requirement of habeas petitions." (citing *Peck v. United States*, 73 F.3d 1220, 1224 n.5 (2d Cir. 1995))).

69, 75 (2d Cir. 2008) ("[T]he 'in custody' language of § 2254(a) is jurisdictional. . . .").

## B. Edwin Rodriguez[4]

Respondents only challenge the petition with respect to Edwin Rodriguez on the merits. As set forth below, the Court concludes that Edwin Rodriguez has not established an ineffective assistance of counsel claim that entitles him to relief.

### 1. Standard of Review

To be entitled to habeas relief, a petitioner must establish that a state court's adjudication of a claim either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"

---

[4] Respondents do not challenge the timeliness of Edwin Rodriguez's petition. In any event, the Court concludes that the petition is timely. Edwin Rodriguez was sentenced on July 12, 2012, at which point he had thirty days to file a notice of appeal under New York law. *See* N.Y. CPL § 460.10. Although he filed his direct appeal on June 22, 2015—well outside this thirty-day time period—the New York Appellate Division permitted him to do so, rendering a decision on that appeal on February 24, 2016. *See Edwin Rodriguez*, 25 N.Y.S.3d 614. The Supreme Court has held that, where a state court permits a criminal defendant to file an out-of-time direct appeal, his conviction becomes "final" and thus commences the one-year limitations period under the AEDPA at the conclusion of the out-of-time direct appeal. *See Jimenez v. Quarterman*, 555 U.S. at 120–21 (2009). Therefore, Edwin Rodriguez's conviction became final for limitations purposes on June 6, 2016 when the New York Court of Appeals denied him leave to appeal the Appellate Division's ruling. The petition, filed on October 7, 2016, is thus plainly timely.

*Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact . . . are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

Here, Edwin Rodriguez argues that he is entitled to habeas relief based on the state court's adjudication of his ineffective assistance of counsel claim. Specifically, he asserts that he received ineffective assistance of counsel because plea counsel failed to inform him that deportation was *certain* to result from his guilty plea. Therefore, he contends that the state court decisions denying relief were contrary to, or unreasonably applied, clearly established federal law, namely *Padilla*, 559 U.S. 356.

2. Applicable Law

Under the standard promulgated in *Strickland*, 466 U.S. 668, a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). For instance, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland,* 466 U.S. at 690). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner, who is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Pavel v. Hollins,* 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). In the context of a guilty plea, to satisfy the "prejudice" prong, "the defendant must show that there is a rea-

9

sonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). However, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (citations omitted).

### 3. Application

#### a. Deficient Performance

Edwin Rodriguez argues that he received deficient performance under *Padilla*, 559 U.S. at 369. In that case, the Supreme Court held that an attorney's conduct "fell below an objective standard of reasonableness" under the first prong, *Strickland*, 466 U.S. at 688, because the attorney failed to advise his client of the immigration consequences of a guilty plea, *Padilla*, 559 U.S. at 369. Specifically, the petitioner in that case faced deportation after pleading guilty to a drug offense, and his attorney "not only failed to advise him of this consequence prior to his entering the plea, but also told him that he 'did not have to worry about immigration status since he had been in the country so long.'" *Padilla*, 559 U.S. at 359.

In concluding that counsel's performance fell below an objective standard of reasonableness, the Court first noted that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 367. Although the Court recognized that, "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences," it held that, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.* at 369. The Court determined that the terms of the statute in question were "succinct, clear, and explicit in defining the removal consequence for [the petitioner's] conviction." *Id.* at 368.[5] Therefore, the attorney "could have easily determined that [the petitioner's] plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Id.* Instead, the attorney "provided him false assurance that his conviction would not result in his removal from this country." *Id.* The Court remarked, "This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368–69. Under these circumstances, counsel's failure to provide the correct advice constituted deficient performance. *Id.* at 369.

Here, the state court record indicates that Edwin Rodriguez received warnings about the *possible* immigration consequences of his plea, *i.e.*, that he *could* be deported as a result of his guilty plea. First, he signed a document acknowledging that "my plea of guilty may have an effect upon my immigration status including a likelihood *or* a certainty of deportation, which has been explained to me by my attorney." (Pet. at 39 (emphasis added); *see*

---

[5] In particular, the statute stated that "[a]ny alien who at any time after admission has been convicted of a violation of . . . any law . . . of a State, the United States or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." *Padilla*, 559 U.S. at 368 (quoting 8 U.S.C. § 1227(a)(2)(B)(i)).

*also* Plea Hearing at 8–10.) Second, at arraignment, Edwin Rodriguez answered, "Yes," when the County Court asked him, "Do you understand that no one can make any promises to you as to what effect these pleas of guilty will have on your status here?" (*Id.* at 18.) Third, after the County Court asked this question, his lawyer confirmed that he, the lawyer, had "explained these immigration issues" to Edwin Rodriguez. (*Id.*)

Edwin Rodriguez argues that, under *Padilla*, where it is clear that deportation will definitely result from a guilty plea, a defense attorney must inform his client that deportation is *certain*, not merely possible. The Second Circuit has agreed with this interpretation. *See United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) ("[W]here the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness." (citing *Padilla*, 559 U.S. at 369); *see also Whyte v. United States*, No. 08-CR-1330 VEC, 2015 WL 4660904, at *4 (S.D.N.Y. Aug. 6, 2015) ("When it is clear that deportation is the 'presumptively mandatory' consequence of a guilty plea, defense counsel must inform his client of that consequence." (quoting *Padilla*, 559 U.S. at 369)); *Shu Feng Xia v. United States*, No. 12-CR-934-9 RA, 2015 WL 4486233, at *4 (S.D.N.Y. July 20, 2015) ("Where, however, the adverse deportation consequences of a particular sentence are 'truly clear,' the logic of *Padilla* instructs that the obligation to alert a sentencing judge to those consequences is 'equally clear.'" (quoting *Padilla*, 559 U.S. at 369)); *Ebrahim v. LeConey*, No. 10-CV-6397 MAT, 2012 WL 6155655, at *13 (W.D.N.Y. Dec. 11, 2012) ("[I]f it truly was clear after comparing Ebrahim's crimes of conviction to the relevant sections of the I.N.A. that he had been convicted of an 'aggravated felony', then he was subject to mandatory deportation. In such case, Attorney LePore's advice that Ebrahim merely had a risk of being deported arguably would not suffice under *Padilla*."). Therefore, the only question is whether the immigration statute at issue was sufficiently clear that deportation was a mandatory consequence of Edwin Rodriguez's guilty plea.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "any alien who is convicted of an aggravated felony at any time after admission is deportable." The language of this provision is just as clear as the language of the provision at issue in *Padilla*, which provided that "[a]ny alien who . . . has been convicted of a violation of . . . any law . . . of a State . . . relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." *Padilla*, 559 U.S. at 268 (quoting 8 U.S.C. § 1227(a)(2)(B)(i) (final omission in original)). Furthermore, sexual misconduct under NYPL § 130.20 plainly qualifies as an "aggravated felony" under 8 U.S.C. §1101(43)(A), which explicitly lists "rape" and "sexual abuse of a minor" within the statutory definition of this term. *See also* NYPL § 130.20[1] ("A person is guilty of sexual misconduct when . . . [h]e or she engages in sexual intercourse with another person without such person's consent."); *cf. Ganzhi v. Holder*, 624 F.3d 23, 30 (2d Cir. 2010) ("[T]he aggravated felony of sexual abuse of a minor requires only that a person: (1) engage in any one of a number of proscribed sexual acts, specifically including sexual intercourse; (2) with a person under the age of eighteen.").[6]

---

[6] Edwin Rodriguez's guilty plea arose out of a sexual encounter he had with a minor. (*See* Plea Hearing at 23–25.) *See Ganzhi*, 624 F.3d at 29 (plea colloquy transcript can be considered in determining whether a crime was an "aggravated felony").

Thus, like *Padilla*, "this is not a hard case in which to find deficiency" because "[t]he consequences of [Edwin Rodriguez's] plea could easily be determined from reading the removal statute . . . [and] his deportation was presumptively mandatory." 559 U.S. at 268–69. In short, counsel had an affirmative duty under *Padilla* to inform Edwin Rodriguez that deportation would result from his guilty plea. His advice that deportation *could* result was insufficient.[7]

The County Court's conclusion to the contrary—affirmed on appeal by the Appellate Division—thus amounts to, at the very least, an "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Specifically, although the court correctly recognized that *Padilla* provided the relevant rule of law, it still held that counsel's advisement "of the *possible* immigration consequences of his guilty plea" did not amount to deficient performance.[8] (October 22 Order at 3 (emphasis added).) Because *Padilla* held that more is required, this conclusion was unreasonable. *See Williams*, 529 U.S. at 413.

b. Prejudice

Nevertheless, the Court concludes that Edwin Rodriguez's claim still fails because he has not demonstrated prejudice resulting from counsel's deficient performance. As noted above, to prove prejudice, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Second Circuit has held that a petitioner is not prejudiced by an attorney's deficient performance where the evidence of the petitioner's guilt is overwhelming. *See Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.") (citing, *inter alia*, *United States v. Reiter*, 897 F.2d 639, 645 (2d Cir. 1990); *Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984)); *see, e.g.*, *Howell v. Superintendent, Fishkill Corr. Inst.*, 536 F. App'x 22, 25 (2d Cir. 2013) (holding that petitioners failed to demonstrate prejudice where there was "overwhelming evidence of their guilt"). Here, there was overwhelming evidence of guilt because the victim gave a sworn statement to the police indicating that she had had sexual intercourse with Edwin Rodriguez when she was fourteen, and Edwin Rodriguez had confessed to this conduct on multiple occasions, including at least once to the police.[9] *See Lang v. Jamrog*, No. CIV. 04-40094, 2006 WL 3147745, at *9 (E.D. Mich. Oct. 31, 2006) (finding overwhelming evidence of guilt based on petitioner's confession and victim's statement); *Wetherall v.*

---

[7] Neither the waiver of Edwin Rodriguez's right to appeal nor the state court's admonition at his arraignment cured this error because neither made it sufficiently clear that deportation would definitely result from the guilty plea.

[8] Significantly, the County Court did not find, as a factual matter, that defense counsel *had* advised Edwin Rodriguez that deportation was certain to result from his guilty plea. Instead, as noted, the County Court found that "the defendant was sufficiently advised of the *possible* immigration consequences of his guilty plea." (October 22 Order at 3.)

[9] To prove second-degree rape, the People only needed to prove that Edwin Rodriguez was over the age of 18—a fact not in dispute—and that he had sexual intercourse with a minor below age 15. *See* NYPL § 130.30. Similarly, to prove sexual misconduct, they only needed to establish that he had sexual intercourse with someone who was unable to consent, NYPL § 130.20, and, under New York law, a person below the age of 17 cannot consent to sexual activity with an adult, *see Rosaly S. v. Ivelisse T.*, 27 Misc. 3d 1210(A), 910 N.Y.S.2d 408 (N.Y. Fam. Ct. 2010) ("The statute establishes that a person less than 17 years old is incapable of consent." (collecting cases)).

12

*Reynolds*, No. CV 9:15-1753-TLW-BM, 2015 WL 9948453, at *9 (D.S.C. Oct. 27, 2015) (same), *report and recommendation adopted,* No. CV 9:15-CV-01753-TLW, 2016 WL 363983 (D.S.C. Jan. 29, 2016); *Washington v. Norman*, No. 4:11-CV-777 CAS, 2014 WL 4230901, at *8 (E.D. Mo. Aug. 26, 2014) (finding overwhelming evidence of guilt based on defendant's confession and victim's statement identifying him as the robber); *Soria v. Long*, No. CV 12-9006-RGK JPR, 2013 WL 4479544, at *10 (C.D. Cal. Aug. 20, 2013) (finding overwhelming evidence of guilt based on a petitioner's incriminating statements); *Martin v. Quarterman*, No. 4:07-CV-015 A, 2008 WL 1904642, at *6 (N.D. Tex. Apr. 29, 2008) (minor victim's testimony concerning "numerous instances of sexual misconduct" constituted "overwhelming evidence of [petitioner's] guilt").

Edwin Rodriguez argues that, even in the face of this overwhelming evidence of guilt, he still would have taken his chances at trial rather than accepting a plea that would result in mandatory deportation. (Pet. at 32.) He cites language from *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947) ("Deportation can be the equivalent of banishment or exile."), and *Padilla*, 559 U.S. at 365 ("Deportation is a particularly severe penalty."), to highlight the severity of deportation as a consequence of his guilty plea. (Pet. at 34.) Indeed, as the Supreme Court noted in *Padilla*, "[p]reserving [a petitioner's] right to remain in the United States may be more important to the [petitioner] than any potential jail sentence." 559 U.S. at 368 (first alteration in original). In light of the gravity of this consequence, and given his significant personal ties to the United States, Edwin Rodriguez argues that it would have been rational "to reject the plea offer, and take a chance, however slim, of being acquitted after trial." (Pet. at 32.)

The Court disagrees. To show prejudice resulting from a guilty plea, "conclusory allegations that a petitioner would have insisted on proceeding to trial are generally insufficient. . . . Indeed, the Second Circuit generally requires some objective evidence other than defendant's assertions to establish prejudice." *Francis v. United States*, No. 12 CIV. 01362 AJN, 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) (citations and brackets omitted). Where deportation is a potential consequence of a plea, "a petitioner must affirmatively prove prejudice by putting forth credible evidence that he would actually have insisted on going to trial had he known of the precise immigration consequences of his conviction." *Id.* In *Gomez v. United States*, No. 10-CV-01886 CBA, 2013 WL 66080, at *6 (E.D.N.Y. Jan. 4, 2013), for example, the petitioner only offered a "conclusory assertion that 'if I knew that I was facing mandatory deportation, I would not have taken the plea and would have taken my chances at trial.'" Before accepting the plea, however, he had been informed on multiple occasions that "deportation was at least a possible consequence of his plea, and he nonetheless accepted the government's cooperation agreement." *Id.* Furthermore, the evidence against him was overwhelming, and he "offer[ed] no evidence that his prospects had he proceeded to trial offered a realistic possibility of a better outcome such that he would have rationally chosen to take the risk of a harsher sentence rather than accept the plea." *Id.* at *7. He also received a "substantial benefit" from his plea that he would have lost had he gone to trial in the form of lesser sentence. *Id.* Accordingly, the court could not "discern a reasonable probability that he would actually have insisted on going to trial had he known of the precise immigration consequences of his conviction." *Id.*

This case bears striking resemblances to *Gomez.* First, like the petitioner in that case, Edwin Rodriguez's self-serving statement

13

that he would have forsaken the plea deal had he known deportation was mandatory is belied by his acceptance of the deal even though, on his own version of the facts, he knew that deportation was a possible consequence of pleading guilty. *See id.* at *6. In addition, the evidence against him was overwhelming, as discussed above, and he received substantial benefits from the plea deal because the People dismissed the more serious second-degree rape charge, which carried a maximum sentence of seven years, compared to the maximum sentence of one year he could receive for sexual misconduct. *Compare* NYPL § 130.30 (classifying second-degree rape as a Class D degree felony); NYPL § 70.02[3][c] (Class D degree felonies bear a maximum sentence of seven years), *with* NYPL § 130.20 (classifying sexual misconduct as a Class A misdemeanor); NYPL § 10.00[4] (Class A misdemeanors bear a maximum sentence of one year). Thus, the Court finds his self-serving statement that he would have rejected the plea deal in favor of a trial insufficient to establish a "reasonable probability" that he would have actually done so. *See Gomez*, 2013 WL 66080, at *7.

Moreover, even assuming that Edwin Rodriguez would have rejected the plea deal based on his significant personal ties to the United States, the Court cannot conclude that such a decision would be "rational" under the circumstances of this case. *Francis* provides a pertinent example of why this is the case. 2013 WL 673868, at *3–4. In *Francis*, as here and in *Gomez*, the evidence of guilt against the petitioner was overwhelming and the petitioner benefitted from the plea deal. *Id.* at *4. Unlike in *Gomez*, however, the petitioner in *Francis* explicitly highlighted his familial connections to the United States and his lack of ties to his home country as evidence he would have rejected the plea deal had he known that deportation was mandatory. *Id.* The Court concluded, however, that, even in light of these personal connections, the petitioner

> ha[d] not presented sufficient evidence that rejecting his plea or vacating it prior to sentencing would have been rational under the circumstances, in large part because he cannot demonstrate that the case against him could have resulted in anything but eventual deportation, regardless of his decision to plead guilty or to proceed to trial.

*Id.*; *see also Al Halabi*, 633 F. App'x at 803 ("[T]he evidence against [the petitioner] was overwhelming. . . . Thus, conviction was a virtual certainty, and the question was not whether [he] would be deported, but when. Under these circumstances, a rational defendant would do exactly what [the petitioner] did, namely, plead guilty and attempt to minimize his custodial sentence.").

In addition, even if it would have been rational to reject the plea deal, the court held that the petitioner was "unable to show that the outcome in his case would have resulted in anything but his being deported." *Francis*, 2013 WL 673868, at *7; *see also Contant*, 987 F. Supp. 2d at 335 (finding no prejudice where the petitioner "failed to provide objective evidence that going to trial would not have resulted in deportation").

The Court agrees with *Francis* that, where the evidence of guilt is overwhelming, it would be irrational for a petitioner to decline a beneficial plea bargain in the hopes of avoiding deportation even if he has strong ties to the United States. *Francis*, 2013 WL 673868, at *6; *see also Al Halabi*, 633 F. App'x at 803. Thus, given that the evidence of guilt here is overwhelming, the Court concludes that it would have been irrational for

Edwin Rodriguez to decline a plea deal that resulted in a substantially more lenient sentence.[10] *See Francis*, 2013 WL 673868, at *6; *Al Halabi*, 633 F. App'x at 803. In any event, like the petitioner in *Francis*, Edwin Rodriguez has failed to demonstrate that "the outcome in his case would have resulted in anything but his being deported" had he declined the plea deal and gone to trial. *Francis*, 2013 WL 673868, at *6; *see also Contant*, 987 F. Supp. 2d at 335. Accordingly, the Court concludes that Edwin Rodriguez has failed to show prejudice resulting from plea counsel's deficient performance.

In sum, Edwin Rodriguez has not established—nor is there any basis in the record to conclude—that he would have rejected the plea deal had he known deportation was a mandatory result of his conviction, that such a decision would have been rational, or that such a decision would have produced a different outcome. As such, he has failed to show prejudice under *Strickland*'s second prong. It follows that he is not entitled to habeas relief.

### III. CONCLUSION

For the reasons stated above, the Court concludes that (1) the petition is untimely with respect to Ricardo Rodriguez, and, in any event, he is not in respondent's custody as required for habeas relief; and (2) Edwin Rodriguez's ineffective assistance of counsel claim lacks merit because he cannot show prejudice resulting from counsel's deficient performance. Accordingly, the petition for a writ of habeas corpus is denied as to both petitioners.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:    May 2, 2017
            Central Islip, NY

\* \* \*

Petitioners are represented by Christopher J. Cassar, P.C., 13 East Carver Street, Huntington, NY 11743. Respondents are represented by Grazia DiVincenzo and Rosalind C. Gray, Assistant District Attorneys, on behalf of Thomas J. Spota, District Attorney, Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, NY 11901.

---

[10] The case on which Edwin Rodriguez relies is distinguishable. *See United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011) *abrogated on immaterial grounds by Chaidez v. United States*, 133 S. Ct. 1103 (2013). There, the court held that the petitioner "rationally could have been more concerned about a near-certainty of multiple decades of banishment from the United States than the possibility of a single decade in prison," but there was no finding that the evidence of guilt was overwhelming. *Id.* at 645. On the contrary, the respondent argued that that there was no prejudice because the petitioner did "not dispute[] the accuracy of the underlying facts" and "admitted in open court that he was guilty" at the time he pleaded guilty, but the court rejected this argument. *Id.* As the Third Circuit noted, "had [the petitioner] not pled guilty, there would not have been any acknowledgment of guilt in open court foreclosing a rational decision to go to trial." *Id.* Here, by contrast, both the petitioner and the victim told the police that they had engaged in sexual intercourse, and that amounts to overwhelming evidence of guilt for sexual misconduct.